# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00771-CV

**Carl E. Ross, Appellant**

**v.**

**Shanney V. Ross, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NO. 19841, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This dispute arises out of a divorce proceeding initiated by appellee Shanney V. Ross against her husband, appellant Carl E. Ross. Along with the divorce, Shanney sought damages for intentional infliction of emotional distress. Following a non-jury trial, the court awarded Shanney a greater share of the couple's community estate as well as damages for her tort claim. Carl challenges the final decree of divorce by six issues, arguing that the trial court erred in its division of the community estate and in awarding damages to Shanney for her claim of intentional infliction of emotional distress. We will overrule Carl's issues and affirm the trial court's judgment.

**BACKGROUND**

Carl and Shanney Ross were married on October 31, 1985; they had two children during the marriage. On January 7, 2000, Shanney filed a petition for divorce, alleging discord and conflict of personalities. She later amended her petition to include cruelty as a ground for the divorce and to add several causes of action, including intentional infliction of emotional distress.[1]

At the time of trial, all conservatorship issues had been settled except for Wednesday night visitation between Carl and the children. The amount of child support, the property division, and Shanney's claim of intentional infliction of emotional distress remained in dispute. These issues were tried to the court.

Following the presentation of evidence by both parties, the trial court granted the divorce on the ground of cruelty and divided the marital estate, awarding Shanney a greater percentage of the estate. The value of the community property awarded to Shanney totaled $250,150; the value awarded to Carl amounted to $57,101. In order to effect a "just and right" division of the community estate, the trial court awarded Carl an owelty[2] from Shanney in the

---

[1] The amended petition included causes of action for assault and breach of fiduciary duty in addition to Shanney's claim for intentional infliction of emotional distress. It appears that the assault and breach of fiduciary duty claims were not tried during the divorce action, and the final decree of divorce does not address those claims. Carl filed a counterclaim, also alleging assault, intentional infliction of emotional distress, and breach of fiduciary duty. His claims were not addressed in the final decree of divorce, and he does not complain about those issues on appeal.

[2] An "owelty" is defined as: "1. Equality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property. 2. The sum of money so paid." *Black's Law Dictionary* 1130 (7th ed. 1999).

amount of $65,799. Thus, Shanney's share of the community estate ultimately totaled $184,351 (60%), and Carl's share was $122,900 (40%). In addition, the trial court awarded Shanney damages in the amount of $150,000 for her claim of intentional infliction of emotional distress. The court also awarded her $2,500 for Carl's unauthorized transfer of a vehicle and $2,000 for Carl's failure to comply with an auto acquisition order,[3] plus attorney's fees. The judgment awarded to Shanney totaled $186,000. From this amount, the trial court subtracted the $65,799 owelty that had been awarded to Carl, thus rendering judgment in the amount of $120,201 against Carl.

Following the rendition of the trial court's final decree of divorce, Carl requested findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. When the trial court failed to file those findings and conclusions, Carl timely informed the court of the past due findings and conclusions. *See id.* 297. The court nevertheless did not file the requested findings of fact and conclusions of law. Carl, however, does not complain on appeal of the court's failure to file findings and conclusions. He challenges the legal and factual sufficiency of the evidence to support the court's division of the property and the judgment for intentional infliction of emotional distress.

## DISCUSSION

### Division of Marital Estate

By his second, third, fifth, and sixth issues, Carl challenges the court's division of the marital estate. He asserts that the evidence is legally and factually insufficient to support a divorce

---

[3] It appears that the trial court had previously ordered Carl to provide Shanney an automobile. Although he purchased a truck for Shanney as ordered, he failed to make the monthly payments, and about a month and a half after the purchase, the truck was repossessed.

3

on the ground of cruelty and therefore the trial court erred in considering cruelty in its division of the marital estate. Furthermore, by considering cruelty as a basis for a disproportionate division of the community property and awarding damages for intentional infliction of emotional distress, the trial court has awarded Shanney a double recovery, argues Carl. He also complains of the trial court's use of the tort damages awarded to Shanney as an offset of the owelty that he was awarded.

### *Standard of Review*

In granting a divorce, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998). The trial court enjoys wide discretion in dividing the marital estate. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court's division of property is not to be disturbed absent a clear abuse of discretion that materially affects the court's just and right division of the property. *Murff*, 615 S.W.2d at 698; *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). The party attacking the trial court's property division bears the burden of demonstrating from evidence in the record that the division was so unfair and unjust as to constitute an abuse of discretion. *Wilson v. Wilson*, 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, no pet.); *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ).

In exercising its discretion, the trial court may consider many factors, including a disparity of incomes or of earning capacities, the spouses' capacities and abilities, benefits the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699. Equality in the division

4

is not required, and this Court indulges every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Id.*; *Johnson v. Johnson*, 948 S.W.2d 835, 838 (Tex. App.—San Antonio 1997, writ denied).

When, as here, a tort action is tried with the divorce, the court must avoid awarding a double recovery. *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993); *Toles v. Toles*, 45 S.W.3d 252, 264 (Tex. App.—Dallas 2001, pet. denied). A spouse should not be allowed to recover tort damages and a disproportionate division of the community estate based on the same conduct. *Twyman*, 855 S.W.2d at 625; *Toles*, 45 S.W.3d at 264-65. The court may still award a disproportionate division of property; however, it must be for reasons other than the tortious conduct. *Twyman*, 855 S.W.2d at 625; *Toles*, 45 S.W.3d at 265. Moreover, recovery for personal injuries of a spouse for intentional infliction of emotional distress is not part of the marital estate subject to division by the court; such a recovery does not add to the marital estate. *Twyman*, 855 S.W.2d at 625 n.20; *Toles*, 45 S.W.3d at 265.

Because no findings of fact and conclusions of law were filed, we must presume that the trial court made the findings necessary to support its ruling, so long as those implied findings are supported by the record. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Where implied findings of fact are supported by the evidence, we must uphold the judgment on any legal theory applicable to the case. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

### *The Evidence*

In her petition for divorce, Shanney alleged that Carl was "guilty of cruel treatment" towards her. She requested a disproportionate share of the community estate and listed as one of the

5

reasons for the request "fault in the breakup of the marriage." Shanney also listed several other factors for the court to consider in dividing the property: fraud on the community and conversion of assets; benefits the innocent spouse may have derived from the continuation of the marriage; disparity of earning power between the spouses; the spouse to whom conservatorship of the children is granted; needs of the children of the marriage; earning power, business opportunities, capacities, and abilities of the spouses; need for future support; nature of the property involved in the division; wasting of community assets by the spouses; gifts to or by a spouse during the marriage; attorney's fees to be paid; and creation of community property by the efforts or lack thereof of the spouses.

In its judgment, the trial court did not specify the reasons for dividing the property as it did. It stated only: "The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage." The court divided the property in such a way that the total value awarded to Shanney was $250,150, and Carl was awarded property valued at $57,101. The court then awarded Carl an owelty in the amount of $65,799, "[f]or the purpose of a just and right division of property." According to the judgment, the owelty was "required to adjust the property division to 60% in favor of [Shanney]."

We must therefore determine if there is any evidence other than evidence of Carl's alleged cruelty (which Carl asserts is identical to the alleged conduct supporting the intentional infliction of emotional distress claim) that supports the disproportionate award of the community property to Shanney. Our review of the record reveals that the trial court was presented with evidence concerning Shanney's non-tort-related claims that could have supported a disproportionate share of the marital estate. According to Shanney, she would have derived substantial benefits from

6

the continuation of the parties' marriage. Shanney also testified that she and Carl shared ownership of a construction company, ROSBAN, with Shanney's father. During the couple's marriage, the company was very successful, and Shanney and Carl enjoyed a "nice" lifestyle. Shanney worked for ROSBAN while she was married and earned a comfortable salary. She has not worked for ROSBAN since she first left the marriage in August 1999.[4] Since then, she has had a couple of other jobs, one as a house cleaner for David Weekly homes for several months, another at GSI for about seven or eight months, another disposing of old telephone books for a couple of weeks, and her most recent one picking up pecan limbs at a pecan pasture, which lasted for three days. She has not found employment since then. Furthermore, when the truck that Carl had been ordered to purchase for her was repossessed, Shanney had to rely on her father to obtain a new vehicle.

The trial court also heard from Jack Bandy, Shanney's father and fifty percent owner of ROSBAN, who testified that he believed Carl has recently been doing construction work on his own and keeping the profits for himself. In addition, the trial court had before it financial information sheets for Shanney and Carl. Shanney's reflected that her monthly expenses totaled $3,175, and her current monthly income (from child support) was $1,600. Carl claimed that his total monthly income was $4,028, and his monthly debts were $6,486.

Carl testified that he had performed only one job on his own and received only $1,500 for it. He further testified that he "[didn't] know that I have a whole lot of earning power right now."

---

[4] Shanney testified that she first left the marriage in August 1999. She returned in October, and she and Carl separated again in January 2000.

Through cross-examination of Shanney, he sought to represent that Shanney's failure to secure employment was a result of her drug use and a forgery indictment. Carl further intimated that because Shanney has not worked consistently, he has had to provide substantial monetary support for her, thus diminishing the marital estate.

In sum, the evidence reveals that Carl enjoyed higher earnings than Shanney, a higher earning capacity, and had more business opportunities available to him. The trial court did not have to rely on Shanney's allegation of cruelty as a basis for the property division. *See Murff*, 615 S.W.2d at 698 (while evidence of fault may be presented, court is not obligated to consider it in dividing marital estate); *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980) (same). The trial court's implied finding that the division is a just and right division of the property, based on factors other than the cruelty allegation, is supported by the evidence. Having reviewed the evidence and indulging every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing community assets, *see Murff*, 615 S.W.2d at 699, we cannot say that the trial court abused its discretion in awarding sixty percent of the community estate to Shanney and forty percent to Carl.

Because we conclude that the disproportionate division of property can be supported on grounds other than Carl's alleged cruelty, we need not address the sufficiency of the evidence to support the court's cruelty finding. *See* Tex. R. App. P. 47.1 (opinion should be as brief as practicable, addressing every issue necessary to final disposition of appeal). We presume that the trial court properly exercised its discretion and did not rely on the same conduct to support both the disproportionate division of the property and the damages for intentional infliction of emotional

8

distress.[5]  We therefore hold that the trial court's judgment did not result in a double recovery.  We overrule Carl's second, third, and fifth issues.

*Owelty*

Carl's complaint regarding the owelty is unclear.  He argues that the "net effect of the Court's judgment is to award the overwhelming majority of the marital or community estate to Appellee, Shanney Ross, as well as judgment for $150,000.00 for tort damages, offset by the owelty interest to create the meaningless appearance of a 60% division to Appellee."  He continues: "Only by the use of the owelty interest does the division constitute a 60% award to Appellee.  In effect, Appellee receives title to virtually all assets and retains a judgment as well.  The creation of an owelty judgment is not supported by the evidence and is arbitrary and unreasonable."

An owelty is a scheme for the equalization of awards of community property in divorce cases.  *Rusk v. Rusk*, 5 S.W.3d 299, 308 n.11 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Equalization by owelty may be used to equalize the property division for any reason.  *Massey v. Massey*, 807 S.W.2d 391, 404 (Tex. App.—Houston [1st Dist.] 1991), *writ denied*, 867

---

[5] This does not dispense with the need to review the sufficiency of the evidence to support the damages awarded to Shanney for her claim of intentional infliction of emotional distress, which we address later in this opinion.  The evidence supporting that tort, however, need not have been relied on by the trial court to justify its disproportionate division of the community estate.  Because the trial court's division of property can be upheld based on factors other than the cruelty allegation, we must presume that the court made the findings necessary to support its judgment, and we must uphold that judgment where, as here, the trial court's implicit findings are supported by the evidence.

9

S.W.2d 766 (Tex. 1993). It appears that the trial court used the owelty award in this case to do just that—achieve a more equitable division of the property. In other words, the owelty was used to decrease the disparity in the property division. This is a proper use of an owelty, and the trial court did not abuse its discretion in these circumstances.

Carl argues that, taking into consideration that Shanney's tort judgment offsets the owelty he was awarded, the trial court's division of the marital property actually results in an eighty-one percent to nineteen percent division in favor of Shanney. By this argument, Carl appears to propose that the trial court should have taken into consideration Shanney's tort judgment in dividing the community estate. Without findings of fact and conclusions of law, we presume that the trial court did consider the damages awarded in Shanney's tort action when dividing the parties' estate and avoided a double recovery. *See Twyman*, 855 S.W.2d at 625. Recovery for personal injuries of a spouse, however, is the separate property of that spouse and is not part of the marital estate subject to division by the court. *Id*. at n.20; *Toles*, 45 S.W.3d at 265. Shanney's recovery for intentional infliction of emotional distress does not add to the marital estate, and the trial court properly refused to include the award in dividing the community property. We overrule Carl's sixth issue.

**Intentional Infliction of Emotional Distress**

By his first and fourth issues, Carl challenges the sufficiency of the evidence to support the trial court's finding of intentional infliction of emotional distress and its award of $150,000 in damages for the tort. A party claiming intentional infliction of emotional distress must

10

prove that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the outrageous conduct caused the complainant emotional distress, and (4) the emotional distress suffered was severe. *Twyman*, 855 S.W.2d at 621; *Toles*, 45 S.W.3d at 259.

### *Standard of Review*

We review legal and factual sufficiency issues in a bench trial using the same standards that we use in reviewing such issues following a jury verdict. *B.C. v. Rhodes*, 116 S.W.3d 878, 883 (Tex. App.—Austin 2003, no pet.). In considering legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Raymond v. Rahme*, 78 S.W.3d 552, 555-56 (Tex. App.—Austin 2002, no pet.). We will overrule the challenge if more than a scintilla of evidence is offered on the disputed fact, enabling reasonable and fair-minded people to differ in their conclusions. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Raymond*, 78 S.W.3d at 556. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Cohn v. Commission for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex. App.—Houston [14th Dist.]

1998, no pet.). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Raymond*, 78 S.W.3d at 556; *Cohn*, 979 S.W.2d at 696.

### *Extreme and Outrageous Conduct*

As a preliminary matter, the court must determine, as a question of law, whether the plaintiff has presented evidence that, if believed, meets the legal standard for "extreme and outrageous" conduct. *Toles*, 45 S.W.3d at 259. The fact finder may believe or disbelieve any or all of the testimony of any witness. *Id.* If reasonable minds could differ, then the fact finder should determine whether in the particular case the conduct was sufficiently extreme and outrageous to result in liability. *Id.*

"Extreme and outrageous" conduct must be so outrageous in character and so extreme in degree as to exceed all possible bounds of decency and be utterly intolerable in a civilized community. *Id.* (citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999); *Twyman*, 855 S.W.2d at 620; *Restatement (Second) of Torts* § 46 cmt. d (1965)). Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. *Bruce*, 998 S.W.2d at 612. Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct. *Id*. The fact that conduct is intentional, malicious, or even criminal does not, standing alone, mean it is extreme and outrageous for purposes of establishing intentional infliction of emotional distress. *Toles*, 45 S.W.3d at 261 (citing *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999)). While occasional malicious and abusive incidents should not be condoned, they must often be tolerated in our society. *Id.* at 262; *Bruce*, 998 S.W.2d at 617. On the other hand, abusive conduct—such as being assaulted,

12

intimidated, and threatened—that forms a regular pattern of behavior should not be accepted in a civilized society.  *Toles*, 45 S.W.3d at 262; *Bruce*, 998 S.W.2d at 617.

A course of conduct should be evaluated as a whole to determine whether it was extreme and outrageous.  *Tiller v. McLure*, 121 S.W.3d 709, 715 (Tex. 2003); *Bruce*, 998 S.W.2d at 616.  Both the regularity and the severity of the conduct are factors to be considered in making this determination.  *Tiller*, 121 S.W.3d at 715; *Bruce*, 998 S.W.2d at 617.  Courts must also consider the context and the relationship between the parties in analyzing whether certain conduct is extreme and outrageous.  *Bruce*, 998 S.W.2d at 612 (citing *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 569 (1987)).  Conduct considered extreme and outrageous in some relationships may not be so in others.  *Toles*, 45 S.W.3d at 261.  Married couples, for example, share an intensely personal and intimate relationship.  *Twyman*, 855 S.W.2d at 627 (Phillips, C.J., concurring and dissenting).  When discord arises, it is inevitable that the parties will suffer emotional distress, often severe.  *Id.*  Thus, there must be evidence of some conduct that takes the dispute outside the scope of an ordinary marital dispute and into the realm of extreme and outrageous conduct.  *Toles*, 45 S.W.3d at 261-62.

Shanney testified about several instances of Ross's continuous harassing conduct.  She testified that, Carl physically abused her, causing her bodily injury, though she provided no specifics.  And Carl once commented to Shanney that she had enjoyed being sexually abused by a relative when she was nine years old.  Shanney also testified that in the year or two before the trial, on at least a dozen occasions, Carl had chased her in his vehicle, sometimes while she had the children in her car.  On one occasion, Carl ran Shanney off the road.  Carl also repeatedly called Shanney on the phone and referred to her with vulgar and obscene language.  He left a message on

13

Shanney's answering machine informing her that he and his new girlfriend were engaged in oral sex. He also threatened to break her neck and told her that she would "find out what happens to people that f— him over." After Shanney moved to a gated community, Carl went to her home uninvited by going over the fence, under the fence, and by boat across the lake. He threatened to sell the truck he had been ordered to acquire for her. A short time later, the truck was repossessed when Carl failed to make the monthly payments. During that time, Shanney was forced to rely on Carl to take the children to school, go to the grocery store, and anything else for which she needed a vehicle. Meanwhile, Carl had three trucks, and Shanney later saw Carl driving the truck that had been repossessed. Eventually, Shanney's father bought her a car.

Shanney's friend, Angela Sims, described Carl as controlling, possessive, and dominating. According to Sims, Carl wanted Shanney's undivided attention and "didn't want to share her with anybody." She recalled that she had been in the car with Shanney on several occasions when Carl followed them. Sims also testified that Carl inspected Shanney's clothing and had to approve of it before she could wear it out. He would look down her dress or lift her skirt, and make sure she was wearing a slip and a bra. Shanney was covered "from her chin to her ankles at all times." When asked about Carl's reaction to Shanney and Sims going on fishing or shopping trips together, Sims explained: "I don't think we ever even went to Wal-Mart without it not being a bad thing." She said Carl would call Shanney on the phone repeatedly when Shanney and Sims were out together, causing Shanney to try to hurry back home. Shanney became more "withdrawn, subdued, and disgusted" after receiving Carl's repeated calls.

14

This evidence, when evaluated as a whole and considered in a light that tends to support the trial court's implicit finding, is sufficient to enable reasonable and fair-minded people to differ in their conclusions about the nature of Carl's conduct. Thus, we hold that legally sufficient evidence exists to support the trial court's implicit finding that Carl engaged in extreme and outrageous conduct.

A neutral review of the entire record reveals that Carl presented contrary evidence. He denied having committed any assaultive behavior towards Shanney and declared that he loved her. He admitted to using profane language in addressing her, but added that she often used the same language with him. He contends that any emotional distress and hostile behavior was mutual. Furthermore, Shanney and Carl continued to have sexual contact even after Shanney initiated the divorce proceedings.

We recognize that the deterioration and eventual dissolution of a marriage is often unpleasant and involves emotional distress. The evidence in this case, however, is sufficient to allow a fact finder to conclude that Carl's persistent and sometimes extreme conduct was beyond unpleasant and was indeed "utterly intolerable." Shanney's and Sims's descriptions of Carl's dominating and abusive nature, coupled with Shanney's accounts of dangerous car chases and persistent, sometimes invective, phone calls support the inference that Carl engaged in a regular pattern of behavior that was sufficiently severe and routine to exceed the scope of an ordinary marital dispute. While the evidence is contested, we conclude that the trial court's implicit finding that Carl engaged in extreme and outrageous conduct is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.

15

*Intentional or Reckless Conduct*

Having concluded that the court's finding of extreme and outrageous conduct is supported by the evidence, we must still determine whether sufficient evidence exists to support a finding of intentional or reckless conduct. Intentional infliction of emotional distress requires either that the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct. *Toles*, 45 S.W.3d at 259. Intentional conduct requires a showing that the actor desired the consequences of his act. *Id.* An actor is reckless when he knows or has reason to know of facts that create a high degree of risk of harm to another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk. *Id.* at 259-60. Intent may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor. *Id.* at 260.

On cross-examination, Carl agreed that *if* he had chased Shanney at speeds of up to eighty miles an hour when she had the children inside the truck with her, such conduct would cause Shanney emotional distress. He also admitted that threatening Shanney with physical assault would cause her severe emotional distress. This evidence is more than a scintilla of evidence that Carl's conduct included intentional and reckless acts that could cause severe emotional distress. And reviewing all the evidence, including the contrary evidence provided by Carl, we hold that the trial court's finding is not so against the overwhelming weight of the evidence as to be manifestly unjust.

*Severe Emotional Distress*

Finally, we must determine whether the evidence supports the finding that Carl's conduct caused Shanney "severe emotional distress." Emotional distress includes all highly

16

unpleasant mental reactions, such as embarrassment, fright, horror, grief, shame, humiliation, worry, anger, and nausea. *Bruce*, 998 S.W.2d at 618; *Toles*, 45 S.W.3d at 262. Severe emotional distress is distress that is so severe that no reasonable person should be expected to endure it. *Bruce*, 998 S.W.2d at 618; *Toles*, 45 S.W.3d at 262-63. The intensity and duration of the distress are factors to be considered in determining its severity. *Toles*, 45 S.W.3d at 263.

Shanney's counselor, Sonny Spangler, testified about the effects Carl's conduct had on Shanney. Spangler first started seeing Shanney in the fall of 1999, two and a half years before the trial and several months before she filed for divorce. At the time of trial, he was still seeing her once a week. He opined that when Shanney returned after leaving Carl and their home the first time, she was "extremely stressed, very depressed and in a state of shock." He advised Shanney to visit a physician who could prescribe her an antidepressant, which she did. Spangler's diagnosis of Shanney was "major depression and also post-traumatic stress disorder." Her primary symptoms, as observed by Spangler, are discouragement, hopelessness, feelings of despair and grief. As of the date of trial, Spangler opined that Shanney "is still suffering from depression and recurrent depression" and is "still traumatized by what has occurred."

Spangler described the tools of abuse used by Carl as his use of control over "every environment that Shanney has: financial environment, her emotional environment, her social environment to see people, the ability to move freely in the neighborhood physically, to see friends, to go places, the control of her physical world in a sense of utilities, her mail, threatening her, her physical self, virtually every control of her sexual environment, her body in terms of unwanted penetration." "Virtually every environment is attempted to be controlled and she has no control,"

17

he continued. He observed that during the periods when there was no communication between Shanney and Carl, Shanney appeared to "go better, more optimistic, hopeful." She "felt good that she could communicate with friends, real good that she could drive down the street and not be followed, a sense of relief." Spangler advised Shanney that she should be prepared to go to a family shelter if necessary and offered her access to his office and couch if she felt she was in harm's way and needed a safe place to stay—an offer he has made only one other time for a patient.

On cross-examination of Spangler, Carl highlighted that Spangler's opinions and diagnoses were based on information provided to him by Shanney, and that Spangler had not verified whether Shanney's account of Carl's conduct was accurate. Spangler admitted that he was only presented with Shanney's version of the events. Furthermore, Spangler agreed that Shanney's drug use, criminal indictments for drug possession and forgery, disputes with her father and other family members, and her car accidents could have contributed to Shanney's emotional distress, and at least part of her emotional distress was simply due to the failure of her marriage. Carl also points out on appeal that he first contacted Spangler and asked him to see Shanney and determine whether their marriage was salvageable. He also paid for Shanney's visits. According to Carl, this evidences that he was not attempting to cause Shanney emotional distress.

Sims testified that during her frequent visits to the Ross home, she observed Shanney react to Carl's domineering behavior by becoming "very uptight and she always tried to please him." Sims witnessed Shanney "cry a lot." Sims described Shanney as a strong person before her marriage to Carl. After the marriage, however, Shanney became "somewhat insecure and unsure of herself"—the "opposite" of what she had been before.

18

Shanney testified that although Carl never caused her "serious" bodily injury,[6] he has caused her serious emotional injury. When asked to describe her current emotional status, Shanney stated that she is "not near so sure of myself" and explained that before her marriage to Carl, she used to look people in the eye while talking to them. As a result of Carl's conduct, she can no longer look people in the eye, for fear that Carl will think she is having an affair.

In sum, the court was presented with evidence from which it could infer that Shanney's symptoms of distress—crying and the general change in her demeanor and personality—were present throughout the marriage, as observed by Sims. And according to Spangler, Shanney had been suffering from depression and post-traumatic stress disorder for at least two and a half years. Although the frequency and severity of the bodily injury that Shanney suffered as a result of Carl's conduct is unclear, this evidence, when viewed in the light most favorable to Shanney, the prevailing party, amounts to more than a scintilla of evidence that Shanney experienced emotional distress so severe that no person should be expected to endure it. Thus, Carl's legal sufficiency challenge must fail. Considering the evidence favorable and contrary to the court's judgment, we hold that the evidence is not too weak to support the court's finding of severe emotional distress; likewise, the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule Carl's first issue.

---

[6] Shanney testified that Carl has caused her bodily injury, but she has never had to go to the hospital as a result of Carl's conduct, and therefore she would not characterize the bodily injury as "serious."

19

*Damages*

Carl contends that the damages awarded to Shanney for her intentional infliction of emotional distress claim are excessive, arguing that "the nature of the conduct does not support damages in the amount of $150,000.00." Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. *Restatement (Second) of Torts* § 46 cmt. k (1965). A claim for intentional infliction of emotional distress does not necessarily require evidence of the physical aspects of assault or battery. *Schlueter v. Schlueter*, 975 S.W.2d 584, 587 (Tex. 1998); *Toles*, 45 S.W.3d at 262; *Restatement (Second) of Torts* § 46 cmt. k. If the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. *Restatement (Second) of Torts* § 46 cmt. k. Indeed, mental anguish can be a basis for the award of damages. *Id.*

In this case, Shanney testified that she experienced bodily harm, although not serious. She described no other physical harm that accompanied her severe emotional distress. Most of her evidence on damages related to mental anguish.

When examining mental anguish damages, we must determine both whether there is evidence of the existence of compensable mental anguish and whether there is evidence to justify the amount awarded. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996); *Houston Livestock Show v. Hamrick*, 125 S.W.3d 555, 579-80 (Tex. App.—Austin 2003, no pet.). Severity of distress is both an element of the tort of intentional infliction of emotional distress and a factor to be considered in determining the existence of compensable damages. *See Hamrick*, 125 S.W.3d at 579; *K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex. App.—San Antonio 1991, writ denied).

20

Indeed, liability arises only when emotional distress has in fact resulted and when it is extreme and severe. *K.B.*, 811 S.W.2d at 640. Having held that sufficient evidence exists to support the court's finding that Shanney suffered severe emotional distress, we similarly hold that sufficient evidence exists to support the trial court's finding of compensable damages.

Shanney also had to present evidence to justify the amount of damages awarded. *See Saenz*, 925 S.W.2d at 614; *Hamrick*, 125 S.W.3d at 580. Shanney testified that she suffered bodily injury as a result of Carl's physical abuse, though she offered no specifics about the injuries. As for Shanney's mental pain and distress, Spangler testified that Shanney suffered from major depression and post traumatic stress disorder. He described her as extremely stressed, very depressed, and in a state of shock. He also testified about her symptoms of discouragement, hopelessness, feelings of despair, and grief. At the time of trial, Shanney was still seeing her counselor and suffering from her symptoms of depression and post-traumatic stress disorder.

In considering this evidence in relation to the court's award of damages, we are guided by the supreme court's instruction that although the fact finder is afforded a measure of discretion in finding mental anguish damages, that discretion is limited; the fact finder "cannot simply pick a number and put it in the blank." *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002) (quoting *Saenz*, 925 S.W.2d at 614). The reviewing court is required to conduct a meaningful evidentiary review and determine whether there is sufficient evidence that the amount of compensation is fair and reasonable. *Id.* (quoting *Saenz*, 925 S.W.2d at 614). Compensation can only be for mental anguish that causes "substantial disruption in . . . daily routine" or "a high degree

21

of mental pain and distress." *Id*. (quoting *Saenz*, 925 S.W.2d at 614). A large amount of mental anguish damages cannot survive appellate review if there is no evidence to support it. *Id.*

Reasonable compensation is not easy to determine in a case like this, but based on our review of this record, it appears that the court as fact finder did more than "simply pick a number and put it in the blank." *Saenz*, 925 S.W.2d at 614. We hold that the court's award of $150,000 is not excessive, and sufficient evidence exists to support it as a fair and reasonable amount of compensation for Shanney's damages. *Cf., e.g.*, *Toles*, 45 S.W.3d at 260 (reinstating jury verdict awarding wife $325,000 for her intentional infliction of emotional distress claim where evidence showed that husband mentally and physically abused wife, causing her to suffer from ulcer, severe depression, and post-traumatic stress disorder); *Garza v. Hernandez*, No. 13-97-853-CV, 1999 Tex. App. LEXIS 2832 (Tex. App.—Corpus Christi April 15, 1999, no pet.) (not designated for publication) (affirming jury award of $375,000 to wife for intentional infliction of emotional distress based on evidence that wife suffered severe distress and depression as result of husband's conduct); *Behringer v. Behringer*, 884 S.W.2d 839, 844-45 (Tex. App.—Fort Worth 1994, writ denied) (affirming award of $13,000 to husband for claim of intentional infliction of emotional distress based on evidence that husband cried all the time, was in fear of his life everyday, would not leave house at night, and lost a lot of weight as result of wife's conduct); *Massey*, 807 S.W.2d at 400 (upholding award of $362,000 to wife for intentional and negligent infliction of emotional distress where evidence showed that wife's psychologist diagnosed husband as having explosive personality disorder and characterized wife as emotionally battered). We overrule Carl's fourth issue.

**CONCLUSION**

We hold that the trial court did not abuse its discretion in dividing the community estate and awarding Carl an owelty to achieve a more equitable division of the property. We further hold that legally and factually sufficient evidence exists to support Shanney's claim for intentional infliction of emotional distress, and the trial court's award of damages in the amount of $150,000 was not excessive, but was fair and reasonable. Finally, because the trial court's division of property can be supported on grounds other than Carl's cruel conduct, the court's award of damages for intentional infliction of emotional distress did not result in a double recovery for Shanney. We therefore overrule all of Carl's issues and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: April 15, 2004